*ᵒ*

### BALDWIN *v.* SCHIAPPACASSE.

1. PRINCIPAL AND AGENT—STATUTE OF FRAUDS.

   A contract for the sale of land, signed by an agent whose authority to make the same rests wholly in parol, is within the statute of frauds.

2. SAME—RATIFICATION.

   A principal cannot ratify the act of his agent, who has assumed without written authority to execute an agreement for the sale of his principal's land, so as to render the alleged agreement binding upon the other party, after such party has disavowed liability thereunder.

Appeal from Wayne; Frazer, J. Submitted April 7, 1896. Decided April 28, 1896.

Bill by Stephen Baldwin against Louis Schiappacasse to enforce a vendor's lien. From a decree dismissing the bill, complainant appeals. Affirmed.

*Griffin & Warner* (*F. A. Baker*, of counsel), for complainant.

*Bowen, Douglas & Whiting* (*William H. Wells*, of counsel), for defendant.

GRANT, J.    The bill of complaint in this case is based upon the following instrument:

"DETROIT, MICH., February 25, 1893.
"Received of Louis Schiappacasse $1,000, part of the purchase price of the following described property, to wit: Lots 1, 2, 3, 4, 5, 10, 11, 12, and 13, part of Youngblood's subdivision of part of the southeast quarter of section 11, of town 1 south, of range 11 east, excepting lots 1 and 328 to 350, inclusive, of plat known as 'Palmer Park Subdivision,' said exception fronting 18.85 feet on Woodward avenue, extending along the Six-Mile road to the Kelly road, and fronting on the Kelly road 120 feet, which I have sold him for Stephen Baldwin, Esq., subject to said plat, on the following terms: Price $100,000; $24,000 more cash to be paid on examination of abstract on, say, March 10, 1893; balance to be paid as follows: $5,000 in one year, and $70,000 in five years, from date of deed, to be secured by purchase-money mortgage, and to bear interest at six per cent. per annum, payable half-yearly.                       J. W. SIMCOCK.
"I agree to buy the foregoing property, on the terms named.                       L. SCHIAPPACASSE."

The bill alleges that, by this document, a sale was made, and that complainant has a vendor's lien for the purchase price; prays for a sale of the property, and a personal decree against the defendant for the residue.    The answer denies that any valid contract was made with Mr. Simcock as the agent of complainant, or that complainant ratified the act of Simcock in making such alleged contract.

The sole authority which Mr. Simcock had, if he had any, rested in parol.    The complainant, some days prior to February 25th, met Mr. Cameron Currie, a real-estate broker, in the street, and told Mr. Currie that his land was for sale, and wanted to know if he could find a pur-

chaser. Mr. Simcock was interested with Mr. Currie at that time in other property matters, and he spoke to Mr. Simcock about selling the complainant's land. The price fixed was $100,000. The contract was not signed by the complainant, nor by an agent authorized by writing. The authority, whatever it was, rested entirely in parol. It needs no citation of authorities to show that this contract was void under the statute of frauds, and did not bind either complainant or defendant, until the complainant had ratified the act in some manner which would take it out of the statute. In fact, Simcock had not even verbal authority to fix the terms provided in this contract. The check was handed to complainant on the evening of February 25th, but this was not sufficient compliance with the statute. He, in fact, did not then accept the contract or ratify the act of his alleged agent. On the contrary, he insisted upon other terms; and, on the 27th day of February, Mr. Simcock went to the defendant with a written statement of terms, which were insisted upon by Mr. Baldwin, different from those in the contract. The defendant and those interested with him refused to accept these terms. Shortly after, an interview was had between complainant and defendant and other parties interested. At that interview, after considerable talk about the terms, complainant declared that, if the deal was not fixed up by 5 o'clock of that day, he should call the deal off. To this the defendant replied, "If that is so, all right," and the parties separated. After this, complainant tendered a deed, and signed a paper ratifying the act of Mr. Simcock, and handed it to the latter. This latter document, however, was never shown to the defendant, and, of course, was not binding upon him. *Dickinson* v. *Wright*, 56 Mich. 42.

Until complainant had placed himself in such a position that defendant could enforce the contract against him, he was not in position to enforce it against the defendant. Until that was done, there was in fact no con-

tract binding upon either party, and the defendant was at liberty to withdraw. Pom. Cont. § 166; *Duvall* v. *Myers*, 2 Md. Ch. 405; *Bodine* v. *Glading*, 21 Pa. St. 50 (59 Am. Dec. 749). After such withdrawal, the complainant could not bind the defendant by any act of ratification. The paper executed by Simcock and the defendant was not a continuing offer to purchase, which might at any time be accepted by the complainant. It purported to express the terms of an agreement of sale, void because there was no written authority to make it, and incapable of being ratified after the refusal of the defendant to be bound by it.

It is evident from the testimony of Simcock, the defendant, and the other parties present when it was executed, that it was not intended to express all the terms of the sale, but was only a preliminary contract. It was contemplated and understood that provisions were to be made for the release of lots as they should be sold by the defendant and those interested with him.. These and others provisions were to be inserted in the final papers, which were to be between complainant and all these parties, and not with defendant alone. If the instrument had been signed by the complainant, or if Simcock had been authorized in writing to sign it, other important questions would arise, which, in the view we take of the case, it is unnecessary to discuss.

The decree is affirmed, with costs.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.