[Civ. No. 3697.  Second Appellate District, Division Two.—November 14, 1922.]

ALBERT STEINFELD & COMPANY (a Corporation), Appellant, v. J. W. BROXHOLME et al., Respondents.

[1] Principal and Agent—Authority of Architect—Revocation of Offer—Damages.—In the absence of express authority, a person employed as an architect in the remodeling of a store is not authorized to contract in the name of the owners for the installation therein of the tile work; and where an offer to do such work is revoked before it is accepted by the owners, the latter cannot

recover damages occasioned by the breach of an alleged contract to do such work based upon the making of such offer and the acceptance thereof by the architect prior to its revocation.

[2] ID.—ACCEPTANCE OF OFFER BY UNAUTHORIZED AGENT—ESTOPPEL. Where the person who has entered into a contract with an unauthorized agent withdraws from it prior to its ratification or acceptance by the agent's principal, without having acted thereon or received any benefit thereunder, he is not estopped to question the authority assumed by the agent. (Opinion on denial of rehearing.)

[3] ID.—EMPLOYMENT OF ARCHITECT—AUTHORITY TO BIND OWNER.— Where one who is an architect is employed to "prepare certain designs and sketches" for remodeling a building, his authority is no greater than that customarily exercised by an architect employed to draw plans and to supervise and direct the construction of a building; and, in the absence of authority expressly or necessarily conferred by his contract of employment, it never is held as a matter of law that one who is employed simply to perform the usual services of an architect has any implied authority to bind his employer by entering into a contract with third persons for the performance of labor or the furnishing of material. (Opinion on denial of rehearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ward Chapman and L. M. Chapman for Appellant.

Westervelt & Ball for Respondents.

FINLAYSON, P. J.—Plaintiff, as the assignee of Harold Steinfeld and Andrew Pizzini, brought this action to recover damages claimed to have been occasioned by the breach of an alleged contract to install tiles in a flower-store at Tucson, Arizona. The store was owned by plaintiff's assignors, and at the times in question was being remodeled by them. The defense was that though defendants made an offer to install the tiles the offer was revoked prior to its acceptance; wherefore defendants asserted that no agreement was consummated, and that therefore there was no breach of contract on their part. The trial court found for defendants and entered a judgment in their favor accordingly. Plaintiff appeals from the judgment, claiming that the uncontradicted evidence shows that defendants' offer was ac-

cepted and that a valid and binding agreement was consummated. Whether the evidence does show this or not is the sole question in the case.

Steinfeld and Pizzini employed an architect of the name of Bray, whose place of business is at Tucson. Defendants' place of business is in Los Angeles. Some time in March, 1919, one of the defendants, J. W. Broxholme, while in Tucson informally submitted to Bray certain figures at which Broxholme said that he thought his firm might install the tiles. Bray submitted the figures to his employers, who said the amount was too high and that they could not spend that much money. Thereafter Bray made certain changes in the plans for the purpose of reducing the cost, of the tiling, and on June 10, 1919, sent the altered blue-prints and sketches to defendants at Los Angeles with a request that they make a bid thereon. On June 23, 1919, one of the defendants saw Bray at Tucson and on behalf of his firm offered to do the work under the altered plans for $1,080. Bray submitted this new bid to his principals, who rejected it and told the architect "to get other bids." They did not direct Bray to enter into a contract, but simply "to get other bids."

Somewhere about the middle of July, 1919, Bray, learning that a Mr. Watkins, a business man of Tucson, was going to Los Angeles, asked Watkins if he would call on defendants when in Los Angeles and see if they could do the work for one thousand dollars. Pursuant to this request Watkins did call on defendants when in Los Angeles, and on July 23d saw the defendant J. W. Broxholme, discussed with him the matter of putting in another bid for the tile work, and was told by Broxholme that if the latter's firm would be allowed to use the tiles which they then had on hand, leaving to their decision the determination of the color of the tiles, they possibly could make a bid to do the work for one thousand dollars. Watkins then sent a telegram to Bray at Tucson as follows: "Can arrange tile except shade. Wire Baltimore Hotel today." In reply Bray immediately sent a telegram to Watkins simply saying, "O. K." Thereupon Watkins again called on J. W. Broxholme, told the latter that he was about to return to Tucson and inquired whether he might tell Bray that defendants would do the work for $1,000. Broxholme told Watkins

that he might so inform Bray. Whereupon Watkins asked Broxholme if he would make the offer in writing. Broxholme said he would, and thereupon wrote, signed and delivered to Watkins the letter which plaintiff claims embodies the terms of defendants' proposal. That letter is as follows: "Los Angeles, Cal. 7/23/19. Mr. J. S. Watkins, Tucson, Ariz. Dear Sir: Confirming our conversation of recent date, we herewith agree to furnish and install the tile work in the building for the Flower Store as designed by Mr. Wm. Bray at your city for the sum of $1000.00 (one thousand dollars.) All to be done as per his plans using white tile on the stairway, but it is understood that on account of the present condition for getting colored tile that we are allowed to use tile out of our present stock, matching the colors desired by Mr. Bray as near as possible. Yours very truly, L. A. Mantel & Tile Co. By J. W. Broxholme." It does not appear when, if ever, this letter was brought to the attention of the owners of the building.

Four or five days later Watkins delivered to Bray at Tucson defendants' written offer of July 23d, and Bray, on August 1st, mailed to defendants at Los Angeles a letter reading as follows: "Tucson, Ariz. August 1, 1919. Los Angeles Mantel & Title Co., 1113 S. Hill Street, Los Angeles, California. Attention Mr. J. W. Broxholme: Dear Sir: Mr. Watkins has informed me that you are willing to go ahead with the tile work for Job 210, 44–46 North Stone avenue, for the consideration of $1000.00. Please find enclosed blue prints for work, and kindly mail upon receipt contract and detail for rough measurements for stairs, etc., giving us the necessary depth to keep back from face of finished work. This work is well along and I trust you will use every endeavor to expedite your portion of it. Yours respectfully, William Bray."

On August 8, 1919, defendants mailed a letter to Bray wherein they advised him that on account of the labor situation they would be unable to do the flower-store job. This letter was received by Bray in due course. Ever since sending this letter defendants have refused to recognize themselves as bound by any contract with plaintiff's assignors. Wherefore this action to recover damages for breach of the alleged contract.

[1] Appellant's claim is that defendants' letter of July 23, 1919, signed by J. W. Broxholme and by him delivered to Watkins, was an offer to do the work for one thousand dollars, and that such offer was accepted by Watkins on the spot, or if not then that it was accepted on August 1, 1919, when Bray mailed to defendants his letter of that date. It is not necessary to decide whether the facts show an acceptance by either Watkins or Bray, for there is a total lack of any evidence of authority on the part of Bray to accept defendants' offer or to deputize Watkins to do so.

The only evidence to which our attention has been called respecting the nature and scope of Bray's employment is the following: Harold Steinfeld, one of plaintiff's assignors, testifying as a witness for plaintiff, was asked in what capacity and for what purpose Bray was employed, and in reply said: "To represent me in making certain improvements in the referred to property"—the Tucson property known as the "Flower Store." Bray, when on the witness stand, upon being asked what he was employed by Steinfeld and Pizzini to do, replied: "To get up some designs for remodeling the premises known as Howe's Flower Store, on Stone avenue in Tucson." It will be recalled that Bray did not take it upon himself to accept either of the two earlier bids submitted by defendants, but that he laid each before his principals for their acceptance or rejection. And when he presented defendants' bid of $1,080 to his employers the latter did not tell him to enter into a contract at a lower and more satisfactory sum; they merely told him "to get other bids."

The foregoing seems to be all the evidence bearing upon the subject of Bray's authority. At most it shows no more than that Bray was employed to render services as an architect in the remodeling of the store. As such architect he had no authority to enter into any contract for any part of the work. He might receive bids and submit them to his employers for their acceptance or rejection, but he had no authority to bind them by accepting a bid from any source. He possessed only such powers as were given him by his contract with the owners. If, without the knowledge or consent of his principals, he could contract for tiles that were agreeable to his taste and at a price which accorded with his ideas of reasonableness, he could bind his employers to

pay for tiles of a color and character which they, perchance, might deem inappropriate, and he might obligate them to pay a price which might far exceed their means or their expectations. We do not think that one employed simply as an architect possesses any such wide range of ·authority. His duty is limited to the supervision and direction of the work that is to be done by the contractor or those acting under him. "The authority of an architect," says the supreme court of Washington in *Schanen-Blair Co.* v. *Sisters of Charity,* 77 Wash. 256 [137 Pac. 468], "is not absolute. He is bound by the general rules of agency. It is nowhere made to appear in the record that the architect had any authority to bind the respondent beyond the terms of its contract with the principal contractors. . . . In the absence of an express contract or compelling facts, it is never held as a matter of law that an architect has any implied power to purchase materials or to enter into a contract for or on behalf of the owner. His duties are well defined and well understood, and there is nothing pertaining to his engagement that is calculated to mislead any one dealing with him." (See, also, 5 C. J., p. 256.) Bray, being without power to enter into a contract for and on behalf of his principals, was without authority to accept the offer contained in defendants' letter of July 23, 1919, or to deputize Watkins to do so. And since defendants revoked their offer before any attempt to accept it was made by Bray's principals, it follows that there never was a consummated contract, and hence that defendants are not guilty of any breach of contract.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 13, 1922, and the following opinion then rendered thereon:

THE COURT.—In an application for rehearing by this court appellant claims: (1) That respondents are estopped from questioning the authority of Bray to enter into the contract on behalf of his principals, Steinfeld and Pizzini; and (2) that, even if respondents were not so estopped,

there still is evidence sufficient to show that Bray did have authority to make the contract. We find no merit in either contention.

1. The doctrine of estoppel invoked by appellant in its petition for a rehearing is not applicable to the facts of this case. We do not question the rule that where one has accepted, acted upon and received the benefits of a contract entered into by him with another as the agent of a third person he is estopped to question the authority assumed by the agent. That, however, is not this case. *Cassin* v. *Marshall*, 18 Cal. 689, cited by appellant, deals with facts very different from those in the case at bar. [2] The present case is controlled by the rule which obtains where the person who has entered into a contract with the unauthorized agent withdraws from it prior to its ratification or acceptance by the agent's principal, without having acted thereon or received any benefit thereunder.

By their letter to Bray of August 8, 1919, respondents withdrew from the alleged contract which forms the basis for this action, and there is nothing in the record before us tending to show that Steinfeld or Pizzini had any knowledge of that contract prior to respondents' withdrawal therefrom. There is nothing in the record which tends to show that Bray's principals at any time prior to respondents' repudiation made any attempt to ratify their agent's unauthorized contract—assuming, without deciding, that Bray's conduct and respondents' letter of July 23, 1919, would have constituted a contract had the former possessed the necessary authority. Indeed, so far as our attention has been called to the testimony, there does not seem to be any evidence of ratification of the contract by Bray's principals prior to the commencement of the action. Until a ratification by them there was no contract binding on Bray's principals. Until, by ratifying the contract, they placed themselves in such a position that respondents could enforce it against them, Steinfeld and Pizzini were not in a position to enforce it against respondents. Until then there was no contract binding on either party. Defendants, therefore, were at liberty to withdraw when they mailed their letter of August 8, 1919, to Bray advising him that they could not do the work.

When a contract is entered into in the name of a principal without his authority, he is in no way affected thereby unless he shall choose to ratify it. If it is binding on the other party in advance of such ratification by the agent's principal, then that other party is bound by a contract which his adversary may treat as void or valid at his pleasure. On principle a contract so executed seems, at most, to amount to no more than a proposal on the part of him who executes it, from which he should have the right to recede until it has been ratified or accepted by the party whose agent exceeded his authority, when, for the first time, it becomes binding on the principal as well as on the person who dealt with the agent in ignorance of the latter's want of authority. This is the view which has received the stamp of approval by our supreme court. In *Salfield* v. *Sutter etc. Co.,* 94 Cal. 546 [29 Pac. 1105], the unauthorized agent had signed the name of the defendant, a corporation, to a paper which purported to be an agreement by the corporation to sell its lands. In stating the principle applicable to such a situation as is presented by the facts in the case before us, the supreme court in that case says: "No doubt the corporation could have ratified it [the unauthorized contract] before the plaintiffs signified their intention not to be bound thereby; but so far as the averments of the complaint show they did not do so. *If the corporation could have elected not to be bound, the same privilege must be accorded the plaintiffs.*" (94 Cal. 550 [29 Pac. 1106].) (Italics ours.) To the same effect is *Baldwin* v. *Schiappacasse,* 109 Mich. 170 [66 N. W. 1091.] In Corpus Juris (vol. 2, p. 524) the author of the article on Agency says: "As to whether or not an unauthorized contract entered into by an agent on behalf of his principal is binding on the third party by the mere fact of ratification without any further action on his part, or whether he has a right to withdraw therefrom, the authorities are conflicting. . . . —the better rule, and that supported by the weight of authority, is that until ratification the third person is free to withdraw from the contract, and if he does not do so the principal's ratification cures the defect in authority and the third person becomes thereafter bound as though the authority had been previously conferred, and he cannot thereafter withdraw except on grounds entitling him to a rescission; but if *before* the prin-

cipal elects whether he will ratify, the other party signifies his intention not to be bound, *there can be no ratification*"—citing in support of this last clause *Salfield* v. *Sutter etc. Co., supra.*   (Italics ours.)

2. Were it not for the earnestness with which appellant urges upon us the contention that the evidence shows that Bray did possess authority empowering him to consummate the contract with respondents, we should not deem it necessary to add aught to what was said by us in the opinion which we handed down when we originally passed upon the merits of the appeal. After a most careful consideration of the able argument advanced by appellant's counsel in their petition for a rehearing, we find it impossible to give our assent to their contention.

In the findings filed by the trial court the scope of Bray's authority is expressly defined. That court found that Steinfeld and Pizzini "employed one William Bray as their agent to prepare certain designs and sketches for remodeling said store building for and under the direction of said Harold Steinfeld and Andrew Pizzini." If this finding is justified by the evidence there can be no question as to Bray's lack of authority to enter into the contract with respondents. [3] Where one who is an architect is employed to "prepare certain designs and sketches" for remodeling a building, his authority is certainly no greater than that customarily exercised by an architect employed to draw plans and to supervise and direct the construction of a building; and, as shown in the opinion heretofore filed, citing *Schanen-Blair Co.* v. *Sisters of Charity,* 77 Wash. 256 [137 Pac. 468], in the absence of authority expressly or necessarily conferred by his contract of employment, it never is held as a matter of law that one who is employed simply to perform the usual services of an architect has any implied authority to bind his employer by entering into a contract with third persons for the performance of labor or the furnishing of material. It only remains, therefore, to consider whether the court's finding defining Bray's authority is supported by the evidence.

Bray himself gave an unequivocal and explicit definition of his authority by testifying that he was employed "to get up some designs for remodeling the premises known as Howe's Flower Store." The trial court accepted this defini-

tion of Bray's authority—a definition given by the agent himself—and found the fact accordingly. This the court was justified in doing, in the absence of some compelling fact or facts necessitating a different finding, and the record does not disclose any facts necessitating, or, we might even go so far as to say, warranting, a different finding. It is true that, as pointed out by appellant in its petition for a rehearing, Harold Steinfeld testified that Bray was employed "to represent me in making certain improvements in the referred to property." But this testimony by one of Bray's principals does not necessitate the conclusion that the scope of Bray's authority at all exceeded the limits specified in the finding made by the trial court. Steinfeld did not tell the court how Bray was to represent him "in making certain improvements in the referred to property." For aught that is disclosed by Steinfeld's testimony, Bray may have been employed by his principals to represent them in any one of a number of possible ways "in making certain improvements" on the property. But Bray, who was an architect, not a builder, tells us exactly how he was to represent his employers and what he was to do "in making certain improvements in the referred to property." He tells us that he was employed to represent them by getting up "some designs for remodeling the premises." When considered in the light of all the evidence in the case, the most logical inference to be deduced from Steinfeld's testimony that Bray was employed to represent him "in making certain improvements in the referred to property" is that Bray, an architect, was simply employed to "prepare certain designs and sketches"—just as the court found. And even if Bray did receive bids prior to the making of the contract sued upon, and even if he did submit such bids to his employers for their approval, his conduct in that regard would indicate no more than that his principals recognized him as possessing the powers usually exercised by an architect employed to draw plans and to supervise and direct the erection of a building. One so employed, as we have shown, does not possess any authority to bind the owner by entering into contracts in the owner's name, for and on the owner's behalf.

The petition for rehearing is denied.