[Civ. No. 5368.    Fourth Dist.    Mar. 21, 1957.]

FORGERON INCORPORATED (a Corporation), Respondent, v. CLIFFORD L. HANSEN et al., Appellants.

Rowell, Lamberson & Thomas, Richard Z. Lamberson and Edwin H. Hiber for Appellants.

Baker, Palmer, Wall & Raymond and Robert L. Raymond for Respondent.

MUSSELL, J.—This is an action for damages alleged to have been caused by the failure of defendants as general contractors to award plaintiff a subcontract for the plumbing in the construction of a college gymnasium and swimming pool in Bakersfield. A jury trial was had and a verdict was returned for the plaintiff. Defendants appeal from the judgment entered in accordance with the verdict and from an order denying their motion for judgment notwithstanding the verdict.

Prior to July 2, 1954, defendants advertised in various building trade papers requesting bids on portions of the construction of the Bakersfield Junior College gymnasium and swimming pool. On that date defendants were engaged in the preparation of a general contract bid to be submitted by them to the public awarding authority for the construction of the entire job and sent one Christian Jessen, an estimator, to their temporary office in Bakersfield to receive the bids of

the various firms who wished to submit subcontract bids to the partnership for such portions of the work which defendants did not contemplate performing themselves in the event that the general construction contract was awarded to them. Various subcontractors had prepared bids for the plumbing, heating and ventilating portion of the work or portions thereof, and on July 2, 1954, submitted them to the bid depository of the Bakersfield Associated Plumbing Contractors, Inc., with which each of such subcontractors was affiliated. The sealed bids, as submitted to the bid depository, were opened at approximately 2 p. m. on that day. The bids of plaintiff Forgeron Incorporated were as follows: Plumbing, $149,800; heating and ventilating, $137,320; and combined plumbing and heating, $283,000. The combined plumbing and heating bid of plaintiff in the sum of $283,000 was the lowest combined bid submitted to the bid depository. Plaintiff's separate bid of $137,320 for the heating and ventilating was the lowest bid for that work. However, plaintiff's separate bid for the plumbing was higher than a bid of $148,000 submitted by the Haverty Company.

The rules of the bid depository provided that contractors submitting bids to the depository should submit separate bids for plumbing and separate bids for heating and ventilating; that the combination figure for both items might be reduced not more than 5 per cent of the total amount; and that all bids, except the combination plumbing and heating and ventilating bid, when conveyed to the general contractor, should contain a condition to the effect that such bid could only be used with another plumbing or heating or ventilating bid which had been submitted in conformity with these rules.

Following the opening of the bids at the depository on July 2, 1954, and at approximately 3:30 p. m., Theodore Forgeron, president of Forgeron Incorporated, by telephone contacted the office of defendants in Bakersfield to convey his bid to them. Mr. Christian Jessen answered the telephone and, according to the testimony of Forgeron, the following conversation took place:

"A. I asked Mr. Jessen if Mr. Hansen was there. He said he wasn't, but he says, 'I'll take the bids.' And I said, 'Well, are you authorized to take bids?' And he said, 'Yes.' I said, 'You understand the rules of the bid box, and that if I am low in the bid box, I'm to get the bid.' And he says, 'Yes.' I said, 'Well, my bid is $283,000, combination plumbing, heating and ventilating.' And he said, 'Well, can you break

it down?' And I said, 'Well, there is no reason to break it down, because there is no combination of bids that can beat mine, my combination. In other words, there is no plumbing bid or heating bid in a combination that would beat my combination bid of $283,000.' And I said, 'You understand that you are not to use it, either of those bids without a member of it has gone to the bid box and that I have the low bid, and it's my job.' And he says, 'I understand that thoroughly. We have gone through the bid box before.' And as far as I know, that was the most of our conversation.

"Q. Was it more than once that Mr. Jessen advised you that they would observe that Hansen & Sons would observe the rules of it? . . . A. Yes. He repeated it two or three times. . . .

"Q. What did he say about their accepting the low bids, the low bid, rather? A. He said that he would like the breakdown on the bid, and I said, 'Why do you want a breakdown? There is no combination that can beat my breakdown, that can beat my combination bid.' And he said, 'Well, out of curiosity.' He says, 'I already knew you had the low bid.' And as far as I can remember, I still insisted that there was no, well, I, it's a fact that I still insisted that I couldn't see why he wanted the breakdown of the two bids; and he said, 'Well, just out of curiosity, what is it?' So, I finally, I says, 'Well, it's $137,320 for the heating and $149,800 for the plumbing, but on the combination I took off, took off $4,000 that I considered I could save by doing both jobs.' And I says, but I says, 'The combination is the low bid, and there is no combination that can beat it.' And he says, 'I know that.'

"Q. Do you remember anything further of the conversation? A. I can't recall anything pertinent."

Thomas Collins, an estimator for Forgeron, listened to a part of this conversation on an extension telephone and he testified in this connection as follows:

"A. Well, the portion of the conversation that I heard when Mr. Forgeron rapped on the window to get me on the extension, well, the gentleman's name, I think he said was— I don't remember exactly what the name was now, sounded like Jensen or something like that—and Mr. Forgeron asked him if he was authorized to take bids, and he said yes, and would he accept the low bid in the Associated Plumbing Contractors' depository; and he said yes, that he would. So, he gave him the price of the bid, and I don't remember what the price of the bid was now, two-hundred eighty some

thousand dollars, as near as I can recollect; and after he had given him the bid, he asked him if he would break it down, and Mr. Forgeron says, 'Why should I break it down?' Says, 'I have the low combination in the bid depository,' and something was said about agreement of the bid depository rules; and I think this Mr. Jessen, . . . said something about wanting a breakdown for, I think it's commuting purpose or something like that. I don't remember just exactly what that phrase that he used at that time; and, let me think a minute. And, then, I believe Mr. Jessen asked him again to break it down, and Mr. Forgeron, I believe, asked him again why he wanted it; and evidently the same answer, and I don't see— wait a minute. So, finally, after he was assured that it wouldn't be used, individually, that he could use it as a combined——. . . .

"Q. Was anything said during the conversation about agreement to accept this bid if it were low? A. Yes. That's what he stated the first thing; the first part of the conversation that he agreed to accept the bid if he was low. That's what he stated.

"Q. Did he ever change that statement during the conversation? A. Not that I know of."

Jessen, called as a witness for plaintiff, testified that he was employed by L. H. Hansen and Sons as an estimator; that as a part of that work he received a bid over the telephone from Forgeron; that he received bids from subcontractors but did not tell them the conditions and circumstances under which Hansen would use their bids; that he never represented to any contractor on behalf of Hansen and Sons that their bid would be used if it was low in the bid depository. In his deposition, which was read into evidence by plaintiff, Jessen stated that in his capacity as estimator he did not make subcontracts with subcontractors; that he was not sure whether he had ever given assurance to a subcontractor that he would have a contract with Hansen and Sons; that he had never agreed with a subcontractor upon receiving his bid that he would be the subcontractor who would do the job in the event L. H. Hansen and Sons were awarded the job; that the telephone conversation with Forgeron was as follows:

"I think it was about three o'clock in the afternoon when Mr. Forgeron called, and he said, 'Well, here's the low bid.' . . . Then he gave me his plumbing and heating figure. I asked him to break the figure down, to give me his separate figures on the plumbing and heating. He refused to do that

at first. I again asked him to break his figure down, and then, he said, 'Well, here it is.' Then, he gave me the plumbing figure and the heating figure. I said, 'Thank you,' and that was about it.''

The general contract for the construction involved was awarded to L. H. Hansen and Sons, who, in turn, entered into a written subcontract with Forgeron Incorporated for the heating and ventilating portion of the work and with Haverty Company for the plumbing work.

It is plaintiff's contention that the telephone conversation between Forgeron and Jessen gave rise to an oral contract between L. H. Hansen and Sons and Forgeron Incorporated by virtue of which the partnership agreed to award to the corporation the subcontract for the plumbing, heating and ventilating work required in constructing the gymnasium and swimming pool in the event said corporation's bid submitted to the partnership was the lowest bid submitted to it. We are not in accord with this contention.

The second amended complaint herein contains two causes of action. In the first it is alleged that L. H. Hansen and Sons orally agreed with plaintiff that said defendants would use the subcontract bid of plaintiff and would name plaintiff as plumbing and heating and ventilating subcontractor upon said project, in the event that plaintiff's was the low bid submitted to said defendants and was the low bid submitted to the Bakersfield Plumbing Contractors' bid depository; and that defendant has failed and refused to award the plumbing subcontract to plaintiff. There is no allegation in this cause of action that Jessen held himself out as agent having authority to bind Hansen and Sons to such an agreement or that he represented himself as such agent. In the second count of the second amended complaint it is alleged in one paragraph that Jessen represented to plaintiff that he was authorized to enter into an agreement with plaintiff and in another paragraph it is alleged, on information and belief, that Jessen was not so authorized. The second cause of action was dismissed on motion of plaintiff's counsel and trial was had on the issues framed in the first cause of action. It is therefore apparent that plaintiff relied upon proof of actual authority of Jessen to enter into an oral agreement obligating Hansen and Sons to award the plumbing subcontract to plaintiff.

Jessen testified in this connection that in his capacity as estimator he did not make subcontracts with subcontractors and had never represented to any contractor on behalf of

Hansen and Sons that their bid would be used if it was low in the bid depository; that he was employed as an estimator and his duty was to arrive at a figure by which Hansen and Sons could do a job and obtain a reasonable profit; that in his dealings with subcontractors in his capacity as an estimator he received their bids and discussed their jobs.

Clifford Hansen, one of the defendants, testified that subcontract bids were received by anyone in the office and usually an hour or two before the bid opening they segregated the subcontract proposals into various classifications and after going through them, they decided which of the sub bids they were going to use in compiling their total bid; that in July, 1954, and prior thereto, they received subcontract bids when they were 'phoned into his office but did not accept them; that they did not award a subcontract before they were awarded the general contract by the awarding authority; that on July 2, 1954, and prior thereto, none of the employees of Hansen and Sons were authorized to enter into any subcontract on a public bid job and Mr. Jessen was not so authorized; that Jessen was advised when he started estimating that his job was material take off and the receiving of sub bids, but that in all awarding and decisions as to what bid would be used in any particular trade, the decision was reserved for his brother or himself; that subcontracts were entered into on standard written forms; that about a week after July 2, 1954, he had a conversation with Forgeron in which he explained to him the reason that he did not list Forgeron as a sub plumbing contractor; that he told Forgeron that they took his combination bid and added the cost of a bond to that bid, which made the total higher than a separate bid of Forgeron on the heating and the bid of Mr. Haverty on the plumbing and that they felt that they would be willing to award Mr. Forgeron the heating contract and Mr. Haverty the plumbing contract.

Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess. (Civ. Code, § 2316.) In Restatement of the Law on Agency, section 7, comments a and b are as follows:

"a. . . . Authority exists only in accordance with manifestations of the principal . . .

"b. By manifestation is meant the expression of the principal's will as distinguished from undisclosed purpose or intention. The manifestation to the agent must be prior to or

contemporaneous with an act done by the agent in order to confer authority upon the agent. A manifestation of consent by the principal after the agent has acted may result in ratification . . ."

And in Restatement of the Law on Agency, section 26, comment a is as follows:

". . . The fact that the principal is willing that another shall act on his account and that the other so believes does not create authority; there must be a manifestation by conduct originating from the principal and coming to the knowledge of the agent."

In *Waniorek* v. *United Railroads*, 17 Cal.App. 121, 132 [118 P. 947], it is said:

"Manifestly, the proper way to show the extent of the agent's authority is to offer evidence of the orders or directions given him or of the rules adopted for his guidance by the principal. If there were no such evidence available, it would be proper to describe the work performed by the agent in the course of his employment, bringing it home to the knowledge and implied acquiescence of the principal, or, in the language of Mecham, 'tracing it to some word or act of the alleged principal.' But without any such showing it is a palpable invasion of the province of the jury to ask a witness whether a certain act is within the scope of the agent's authority; neither can it be justified upon the theory that the witness was an expert upon the subject, as the duty of these employees is not a matter of expert testimony."

In *Albert Steinfeld & Co.* v. *Broxholme*, 59 Cal.App. 623 [211 P. 473], it was held that an architect employed in the remodeling of a store, in the absence of express authority, did not have any authority to bind the owner by entering into contracts in the owner's name for and on the owner's behalf.

There is evidence in the record that Jessen entered into written agreements somewhat similar to the one asserted by plaintiff over a year after the original complaint herein was filed and that such was done with the knowledge of his employer. However, this merely showed authority to enter into such written agreements at a time more than one year after this action was filed.

We find no substantial evidence in the record that Hansen and Sons conferred actual authority upon Jessen to enter into an agreement binding them to award the plumbing contract to plaintiff. The text of the notices published by Hansen and Sons advertising for bids is not before us and it

does not appear that Hansen and Sons were obligated to accept combination bids rather than the separate bids of the various subcontractors. It is apparent that the defendants could award the plumbing contract to one contractor and the heating and ventilating contract to another, if they so desired.

There is no doubt that Jessen had authority to receive bids; he was sent to Bakersfield for that purpose. It was understood by Forgeron and Hansen and Sons that a written agreement would be entered into betweeen the parties if the contract was later awarded to plaintiff. There is a distinction between receiving bids and awarding contracts and while Forgeron asked Jessen if he was authorized to take bids, he made no inquiry as to whether Jessen was authorized to award subcontracts, and it does not appear that Jessen offered, promised or agreed to enter into a binding contract whereby plaintiff would be employed to do the plumbing job. None of the terms of the proposed subcontract were discussed and there was no conversation or indication as to when the work would be performed, when the payment would be due, or what specific plumbing, heating and ventilating work was to be performed.

■ As stated in 12 California Jurisprudence 2d, Contracts, section 111: "An agreement to make in the future such a contract as may be agreed upon at the later time amounts to nothing, is not binding, and cannot be made the basis of a cause of action." ■ And at page 218, section 26: "When it is part of an understanding between the parties that the terms of the contract are to be reduced to writing and signed by them, there is no binding agreement until a written contract is signed." (*Dexter* v. *Ankiewicz,* 26 Cal.App.2d 326, 333 [79 P.2d 400].) ■ Moreover, an agreement to be enforceable must be supported by good and valuable consideration, and the consideration must be such as was bargained by the parties. As was said in *Simmons* v. *California Institute of Technology,* 34 Cal.2d 264, 272 [209 P.2d 581]:

"But the consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. (*Bard* v. *Kent,* 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032]; *Tiffany & Co.* v. *Spreckels,* 202 Cal. 778 [262 P. 742]; *Williams* v. *Hasshagen,* 166 Cal. 386 [137 P. 9]; *Lasar* v. *Johnson,* 125 Cal. 549 [58 P. 161]; Rest., Contracts, § 75; see Williston, Contracts; rev. ed.; §§ 61, 100, 102, 102a.) In the words of section 75 of the Restatement of Contracts

(com. b) : 'Consideration must actually be bargained for as the exchange for the promise . . . The existence or non-existence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties . . . The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange.' (Language approved in *Bard* v. *Kent, supra,* p. 452.) "

In the instant case it appears that even if Jessen promised or notified Forgeron that he would get the job if his combination bid was low, there was no evidence as to what Jessen expected or wanted in exchange for such a promise, or upon what his promise was conditioned. The statement by Jessen that Forgeron would get the bid may well have been Jessen's opinion in the matter. It was not a statement that he, Jessen, had the authority in behalf of Hansen and Sons to award the plumbing contract or that Hansen and Sons would enter into a written contract with plaintiff.

It is stated in respondents' reply brief that since the outset of this litigation respondents have frankly relied upon the contractual theory noted in *Estate of Lynch,* 62 Cal.App. 687 [217 P. 807]. In that case the court had under consideration a written notice by the executor of an estate to the effect that he would sell at private sale on or after a given hour, on a specified day, to the highest bidder therefor, upon certain terms and conditions, one of which was that all bids should be in writing. It was contended that the notice constituted an offer to sell and the court said, at pages 689-690:

"The notice merely amounts to an indication to sell; and the mere submission of a bid in response thereto cannot be construed as an acceptance of an offer. That the executor did not accept the appellant's bid (offer) is evidenced by his act in calling for higher bids and his acceptance of the Levin offer. The act of the executor in advertising for bids did not, therefore, constitute an offer. It was but a mere preliminary act amounting to no more than a mere solicitation of bids, leading up to a sale. The bid of appellant was, of course, an offer, but until accepted no rights were created thereby between the parties."

In the instant case, the notices calling for bids are not before us and in what respect Hansen and Sons were bound

by them is not apparent. The offer of Hansen and Sons was in the notice calling for bids and the telephone conversation between Jessen and Forgeron did not constitute a binding agreement. It is evident that in order that Jessen's statement would constitute an offer it would necessarily have to be something more than a statement that Hansen and Sons would award the contract to plaintiff and something more than a statement that he understood that the low bidder was to get the job.

It follows from what we have heretofore said that the judgment must be reversed and it is therefore unnecessary to pass upon other points relied upon by the defendants.

The judgment is reversed and a new trial ordered. The order denying the motion for judgment notwithstanding the verdict is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 18, 1957, and respondent's petition for a hearing by the Supreme Court was denied May 20, 1957.