[S. F. No. 6117. Department Two.—November 19, 1913.]

WILLIAM R. .WILLIAMS, Superintendent of Banks, etc., Appellant, v. ADELINE HASSHAGEN, Defendant and Respondent; STATE SAVINGS AND COMMERCIAL BANK (a Corporation), Intervener and Appellant.

PROMISSORY NOTE — PRESUMPTION OF CONSIDERATION — HOW OVERTHROWN.—The presumption that a consideration passed for the execution of a promissory note is merely *prima facie* and may be overcome by direct proof; it is a disputable presumption, and disputable inferences or presumptions are the weakest and least satisfactory evidence.

ID.—NOTE PAYABLE TO BANK—FAILURE OF CONSIDERATION.—In this action by the superintendent of banks to enforce a promissory note made payable to an insolvent bank, the presumption of a consideration for the note is overthrown by proof of the circumstances surrounding its making and delivery, and the evidence is sufficient to sustain the court's finding that there was a want of consideration for the note.

ID.—CONSIDERATION FOR NOTE—CANCELLATION OF OTHER NOTES.—The cancellation by the bank of other notes which it held against its officers, one of whom was the son of the maker of the note in suit, did not constitute a consideration for such note, where the maker knew nothing about the canceled notes. The minds of the parties to a contract must meet before there can be any such consideration.

ID.—PROMISE OF REIMBURSEMENT—INSUFFICIENCY AS CONSIDERATION.—Promises of the cashier and manager of the bank to reimburse the maker of the note, and to see that she lost nothing by signing it, were not valid considerations.

ID.—HOPE OF PROFIT—WHETHER CONSTITUTES CONSIDERATION.—The hope of the maker of the note that her son,.who was an officer of the payee bank, might profit by the use of the note in the purchase of stock from another bank, did not amount to a consideration. Mere motive, inducement, or hope of profit is not consideration.

ID.—ACCOMMODATION NOTE—RIGHT TO ENFORCE.—The party for whose accommodation negotiable paper is made cannot sue the accommodation party.

ID.—FRAUD IN PROCURING PROMISSORY NOTE—SUFFICIENCY OF EVIDENCE TO SHOW.—In this action by the superintendent of banks to enforce a promissory note payable to an insolvent bank, the evidence is sufficient to establish that the note was procured from the

maker by the fraud of the cashier and manager of the bank in falsely representing to the maker, who was a woman seventy-six years of age and not conversant with business affairs, that the note was to be used for the purchase of stock in another bank, while in fact it was intended for use in paying notes of the manager and his codirectors held by the bank.

ID.—ATTEMPT TO COLLECT NOTE AS EVIDENCE OF FRAUD IN PROCURING IT.—The attempt of the bank to collect the note, instead of returning it as promised by the cashier and manager, is sufficient evidence of that fraud which arises under subdivision 4 of section 1572 of the Civil Code, from the making of a promise without intention of performance.

ID.—FRAUD OF MANAGER—WHETHER IMPUTABLE TO BANK.—The fraud of the cashier and manager of the bank in procuring the note is imputable to the bank in its action on the note; his knowledge is presumptively that of the bank, and it makes no difference that he took some personal benefit from the fraud.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

F. A. Cutler, and Arthur Crane, for Appellants.

Edward C. Harrison, and Maurice E. Harrison, for Respondent.

MELVIN, J.—The superintendent of banks, having taken charge of the affairs of the State Savings and Commercial Bank, an insolvent corporation, commenced this action against Adeline Hasshagen upon a promissory note signed by her and payable to said banking corporation.   The bank was permitted to intervene.   The defendant pleaded want of consideration for the promissory note and fraud in its procurement, these same defenses being urged against the plaintiff and the bank and in her cross-complaint she sought judgment for the cancellation of the note, for recovery of certain of her securities which had been hypothecated with the note, and for moneys which had been collected on said securities.   The defendant was given a favorable judgment upon both defenses, and upon her cross-complaint the judg-

ment was in her favor upon all of the issues. Both plaintiff and intervener appeal from the judgment and from an order denying their motion for a new trial.

The principal contention upon which the appellants ask for a reversal of the superior court's action is that the evidence fails to sustain the findings in favor of the respondent both as to want of consideration and upon the issue of fraud. We will examine the testimony relating to want of consideration, but first we will set down some facts which are shown without contradiction. Mrs. Hasshagen was an old woman, seventy-six years of age, and not accustomed to business transactions. Her son was the president of the banking corporation. W. C. Hays was the manager of the bank. It was admitted that the promissory note, which was for thirty-four thousand dollars, together with a check for nineteen thousand dollars signed by the Hasshagens, was received by the State Savings and Commercial Bank in payment of four promissory notes of W. C. Hays, T. A. Bechtel, C. T. Hasshagen (respondent's son), and F. V. Kington, all officers of the bank, the aggregate amount of the notes being fifty-three thousand dollars. These notes were canceled on June 24, 1909, the date of Mrs. Hasshagen's note to the bank.

Upon the subject of want of consideration the old lady, testifying in her own behalf, said: "Mr. Hays, he came to my house and always begging that I sign the note. I said that I would come down to the bank at another time there. I went to the bank. He said, 'I assure you that you will not lose anything by it if you sign this note.' " "I did not receive any money or any property of any kind from Mr. Hays or from any one else for that note. I never knew that the bank held a note of Mr. Hays. I did not know at the time I signed that note that the bank held a note of Mr. Kington's or of Mr. Bechtel.

CROSS-EXAMINATION.

"I don't think there was anybody else but Mr. Hays present when I signed the note. Mr. Hays said to me, 'Sign this note and I promise you you will lose nothing by it.' " At another time during the trial she testified: "At the time I executed the promissory note here sued upon I had no knowledge of the failing circumstances of the State Savings and Commercial Bank. I knew nothing about its financial con-

dition; my son didn't discuss his business with me. I did not know that the bank held any note of his. They all told me the bank was prosperous, and I believed it." And again: "As a matter of fact I did not receive anything for the note. I never received any stock. I never talked with any one about having any of that stock assigned to me. I never saw any of the stock." Appellants assert that the stock of the bank which had been pledged as collateral security for the four notes was transferred to Mrs. Hasshagen, and that therefore the note was supported by a consideration. It is true that some days after the signing and delivery of the note the bank's secretary wrote to Mr. Harrison, who was Mrs. Hasshagen's attorney, informing him that the bank held his client's note for thirty-four thousand dollars, and that certain stock, certificates for which were delivered with the latter, was "to be held by Mrs. Hasshagen pending the settlement of the above note." There was no direct statement in the letter nor was there any testimony at the trial that this stock constituted a consideration for the note. Mr. Harrison testified to the possession by him, in Mrs. Hasshagen's behalf, of certain stock which he desired to vote with other stockholders in an effort to oust W. C. Hays from the directorate of the bank. Of this he said: "The certificates of shares of stock which I said were turned over to be utilized for that purpose was not derived by Mrs. Hasshagen by virtue of the thirty-four thousand dollar note which she gave to the bank." The counsel for appellants refer to this stock as "pledged with respondent and returned." We can see no reason why the payee of a note should pledge its own stock with the maker unless there were some agreement by which the maker was to be indemnified against any claim on the note. But whether this was such an agreement of indemnity or not, the *pledge* of its stock to the maker of the note would not support the theory that said stock was given by way of *consideration* for the note.

But appellants seem to rely upon the legal presumption of a consideration arising from the note itself, from the promise of Hays to reimburse Mrs. Hasshagen, from the benefit which she supposed her son would obtain from the transaction and from the cancellation of the four promissory notes. While it is true that the execution of the note

imports a consideration, the presumption that a consideration passed for the execution of the instrument is merely *prima facie.* It is disputable and may be overcome by direct proof. "But disputable inferences or presumptions, while evidence, are evidence the weakest and least satisfactory. They are allowed to stand, not against the facts they represent, but in lieu of proof of them. The facts being proven contrary to the presumption, no conflict arises; the presumption is simply overcome and dispelled." (*Savings & Loan Soc.* v. *Burnett,* 106 Cal. 529, [39 Pac. 922].) In the case here considered, in view of the evidence of the circumstances surrounding the making and delivery of the note, the presumption of a consideration is overcome. Of course the cancellation of the old notes would not amount to a consideration, if Mrs. Hasshagen knew nothing about them—and she swore that she was ignorant of their very existence. The minds of the parties to a contract must meet before there may be any such consideration. (*Shadburne* v. *Daly,* 76 Cal. 359, [18 Pac. 403].) The promises of W. C. Hays to "reimburse" the old lady or to see that she lost nothing by signing the note were not valid considerations. In the absence of fraud they might have amounted to an assurance that she was making an accommodation note for the payee and that she would not be required to pay it. The party for whose accommodation the paper was made may not sue the accommodation party. (7 Cyc. 725, 726; *Coghlin* v. *May,* 17 Cal. 516.)

Nor did her hope that her son might profit by the use of the note in the purchase of stock from another bank amount to a consideration. Mere motive or inducement or hope of profit is not consideration. "If a motive alone were equivalent to a consideration, every promise made free from fraud, duress and the like, would necessarily be enforceable without any consideration." (Page on Contracts, sec. 275. See, also, 9 Cyc. 320.)

There was, therefore, sufficient evidence to support the court's finding that there was a want of consideration for the note.

Fraud was also sufficiently established. We have adverted to the advanced age of Mrs. Hasshagen and her ignorance of business and her statement that she knew nothing of the existence of the notes which were discharged by the substitu-

tion of the note which she had signed and the securities which she had deposited. The court found upon evidence amply sufficient that Hays falsely represented to her that he intended to use her note for the purchase of stock of the National Bank of the Pacific; that his motive was to get her to deposit the securities and sign the note so that he might substitute them for the promissory notes of himself and his codirectors; that he concealed his design from her; that she was ignorant of his true purpose; that at the time of the practicing of the fraud upon her, Hays was the cashier and manager of the bank, and directed its affairs and "that if said cross-complainant had not believed all said representations so made to her as aforesaid by said Hays to be true, or if she had known that her said promissory note and securities were being taken by said corporation in satisfaction of the said note of its said directors, she would not have signed the said note for thirty-four thousand dollars or deposited her aforesaid securities with said bank." A few quotations from her testimony will suffice. "Mr. Hays was always asking me to sign. I think I had signed other papers before for the bank at Mr. Hays's request, but he always came to my house and he sat there and he begged and he begged with reference to some other papers, too, but this paper, Mr. Hays did not give me thirty-four thousand dolllars. He didn't give me anything. He promised that I should have my money back again; that is what he promised me. The money that I signed for, or I should not sign the note. Because he would see I would not lose." "Q. . . . what use did you think Mr. Hays or the bank could put that note to? Why did you think he wanted you to sign? A. They wanted for to buy other stock in a bank; that is what they wanted it for. Q. It was your note, thirty-four thousand dollars, that would buy the stock? A. Yes, sir. They would fix it up, so he begged me so much to sign that. Q. Did you expect to get any money or any stock or anything else of value because you had signed that note, or did you expect afterward that they would give you back the note? A. I thought I would not lose anything; I thought Mr. Hays would pay me back again; that is what I thought. I thought Mr. Hays would pay me always; that is what he always told me." "A. . . . He always said I would not lose anything. For which reason

I thought I would get everything back. That he would pay up everything again. Mr. Harrison: In other words, whatever your understanding of the transaction was resulted from Mr. Hays's statement to you that you would never lose anything; is that true? A. That is just what I thought; I should not lose anything. He didn't say exactly in what way I would not lose anything. He said he would do so well he would see I should not lose anything at all. He said they would do well. He did not give me any writing. He did not give me any contract in writing. Mr. Harrison: His honor wants to know what you expected Mr. Hays to do with the note? A. Well, I thought they would buy the bank; that is what he told me; he said they would buy the other bank; and he go there, too; to fix it up. Mr. Harrison: He told you something about buying out some other bank, did he? A. Yes, sir." This evidence sufficiently sustains the findings. The effort of the corporation to collect the note instead of returning it according to the promise of Hays is sufficient evidence of that fraud which arose from the making of a promise without intention of performance. (Civ. Code, sec. 1572, subd. 4.) The fraud practiced by Hays was also of the kinds mentioned in the three first subdivisions of that section.

Appellants deny the existence of any evidence that the note would not have been signed except for the representations of Hays. Of course, it is a necessary constituent element of actual fraud that the consent of the person defrauded would not have been given save for the false representations. (Civ. Code, sec. 1568.) But the aged cross-complainant, after describing the importunities and promises of Hays, said: "Mr. Hays came there so often, and then he always asked me, and then he assured me that it was all right. I should not be afraid, it was all right. That is the reason I signed it." In addition to this direct statement there was evidence sufficient to justify the court in drawing the conclusion that the false statements of Hays must have been the inducing cause of Mrs. Hasshagen's action and that without his misrepresentations no contract would have been made.

Appellants suggest that Hays was a mere agent and that his fraud is not imputable to his principal. It is to be remembered in the first place that the intervener is the corpo-

ration itself and not a transferee, for value. It is also to be kept in mind that Hays was the manager and had general charge of the business of the bank. He "controlled matters involving the policy of the bank and the management of its affairs," as the president testified. It will be presumed in favor of third parties that he communicated his knowledge to his principal of any facts material to the transaction. His knowledge is presumptively that of the bank, and it makes no difference that he took some personal benefit from the fraud. (*McKenney* v. *Ellsworth*, 165 Cal. 326, [132 Pac. 76]; 10 Cyc. 1053–54–55.)

The cross-complainant alleged that respondent hypothecated as security for the note sued upon certain promissory notes, among them a note of the Auburn Motor Car Company for three thousand dollars. The court found that this was true, and appellants contend that absolutely no evidence was introduced showing that the Auburn Motor Car Company note was deposited as security for the note in suit. Mr. Grange testified that Mrs. Hasshagen owned a certain note of the Union State Bank for twelve thousand five hundred dollars, secured by certain instruments, which were the same securities mentioned in the cross-complaint including the note of the Auburn Motor Car Company. S. P. Young testified that there was in the bank a note of the Auburn Motor Car Company for five thousand dollars on which two thousand dollars was paid April 23, 1909, and three thousand dollars July 9, 1909. The letter of the bank's secretary and cashier, Mr. Bechtel, dated July 13, 1909, written to Mr. Harrison and put in evidence by the corporation shows Mrs. Hasshagen's right to a credit of three thousand dollars. These proven facts indicated that the bank had received three thousand dollars upon Mrs. Hasshagen's account from the note of the Auburn Motor Car Company. There was no effort to show that this sum of three thousand dollars had ever been paid to Mrs. Hasshagen, or that the credit was applicable to some other transaction, and we cannot say under all these circumstances that the evidence fails to sustain the finding with reference to this item.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurrred.