[L. A. No. 17820.   In Bank.   Feb. 10, 1942.]

BEN BARD, as Special Administrator, etc., Respondent, v. L. E. KENT, Individually and as Director, etc., Appellants.

Bautzer & Ryan, Gregson Bautzer, G. Bentley Ryan, Perry Bertram and Bertin Weyl, Jr., for Appellants.

Paul Vallée and Jerome H. Kann for Respondent.

TRAYNOR, J.—The defendant in this action, L. E. Kent, administered the business affairs of Mrs. Ruth Roland Bard, hereinafter referred to as Miss Roland, under a general power of attorney for many years before her death. In 1933, Kent, acting as agent for Miss Roland, leased for five years a parcel of real property owned by her to Cliff Odums and Albert M. Berkson, who constructed a building on the property and installed equipment for the operation of a restaurant named the Cat and the Fiddle. The restaurant failed, and Odums and Berkson abandoned the venture. Thereupon Kent, acting in his personal capacity, together with Howard Hastings and Don Carpenter, organized a corporation, known as the Cat and the Fiddle Company, which assumed the obligations of Odums and Berkson and took over the operation of the restaurant. When this venture likewise proved unprofitable, Kent bought the stock of Hastings and Carpenter in the Cat and the Fiddle Company and continued to pay off the obligations that the company had assumed. Various sublessees who thereafter tried to operate a restaurant on the premises were unsuccessful.

On August 21, 1935, Miss Roland executed a lease of the premises to the Cat and the Fiddle Company for a term of five years. The lessee subsequently obtained an extension of the lease and written authority to sublease the premises to M. A. McDonnell. On August 30, 1935, the premises were subleased to McDonnell for a term of five years ending August 31, 1940, with an option to renew the lease for one year. This lease from the Cat and the Fiddle Company to McDonnell included the right to use the equipment and fixtures on the premises and provided for rental payments of 10% of the gross receipts up to $6,000 and 8% of the gross receipts over that amount, with a minimum payment of $450 per month. The restaurant operated by McDonnell proved highly successful, and he made improvements costing approximately $30,000. Meanwhile Kent dissolved the corporation,

distributed its assets to himself, and continued his business as an individual under the fictitious name of the Cat and the Fiddle Company. As owner of the improvements upon the property he received half of the rent, but upon termination of the lease the improvements were to revert to Miss Roland.

During 1936 McDonnell told Miss Roland and Kent that he would undertake additional improvements at a cost of about $10,000 if his lease were extended for another four years. Miss Roland in subsequent conversations with Kent expressed a willingness to grant the extension if the proposed improvements would cost approximately $10,000. She suggested that Kent check the figures and have an architect draw sketches for the purpose of making an estimate. On August 17, 1937, Miss Roland executed to the Cat and the Fiddle Company an option to extend its lease for an additional four years in order that it in turn could give McDonnell an extension of his lease. The option was signed for Miss Roland by Kent as her attorney in fact. It recited that "For consideration of Ten Dollars ($10.00) and other valuable consideration" the Cat and the Fiddle Company was granted an option to extend its lease for an additional period of four years. After the option was signed, Kent instructed Kenneth McDonald, an architect, to draw sketches of the proposed improvements. These sketches were billed to Kent and paid for by him subsequent to the deaths of the architect and Miss Roland.

On September 22, 1937, before the option was exercised, Miss Roland died. The special administrator of her estate brought this action against Kent to cancel and set aside the option on the grounds that it was not only given without consideration and therefore revoked by the death of the offeror, but that it was obtained by fraud. It was stipulated that the sum of $10 was not paid to Miss Roland and that none of the proposed improvements were made. The trial court found that defendant made a complete disclosure of all the transactions to Miss Roland and that he was not guilty of any fraud or wrongdoing in his dealings with her. The court also found, however, that there was no consideration given for the option and that it was therefore revoked by Miss Roland's death. Defendant has appealed from the judgment in favor of plaintiff.

An option is an offer and if it is without consideration, it is revoked by the death of the offeror prior to accep-

tance. If consideration is given, it is a contract binding upon the offeror and upon his successors in interest after his death. (See case cited in 6 Cal. Jur., pp. 48-53, secs. 27, 28, 29; Williston, Contracts (revised ed.), secs. 61, 62; Cal. Civ. Code, sec. 1587(4).) Since the trial court found that no consideration was given for the option in question, the judgment must be upheld if the finding is supported by sufficient evidence.

Defendant contends that his payment of the architect's fee for sketches of the proposed improvements is a consideration sufficient to make the option irrevocable. There is no doubt that such payment would be consideration for an option if the offeror agreed to accept it as such. (*Marsh* v. *Lott*, 8 Cal. App. 384 [97 Pac. 163]; *Chrisman* v. *Southern Calif. Edison Co.*, 83 Cal. App. 249 [256 Pac. 618]; 6 Cal. Jur. 168, 169, sec. 117; 1 Williston, Contracts (Revised ed.), secs. 102, 102a; Rest. Contracts, sec. 75; see *Hemenway* v. *Abbott*, 8 Cal. App. 450 [97 Pac. 190].) No act of an offeree, however, can constitute consideration binding upon the offeror unless the latter agrees to be bound in return therefor. (*Williams* v. *Hasshagen*, 166 Cal. 386, 390 [137 Pac. 9]; *Shadburne* v. *Daly*, 76 Cal. 355, 359 [18 Pac. 403]; *Commercial Bank* v. *Redfield*, 122 Cal. 405, 409 [55 Pac. 160, 772]; *Tiffany & Co.* v. *Spreckels*, 202 Cal. 778, 790 [262 Pac. 742]. See Williston, Contracts (revised ed.), sec. 61, at pp. 180, 181, note 16; secs. 100, 102, 102a.) In the words of the Restatement of Contracts (sec. 75): "Consideration must actually be bargained for as the exchange for the promise. ... The existence or non-existence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties. ... The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange."

In the present case the trial court was justified in concluding from the evidence that Miss Roland did not promise to grant the option in return for Kent's engaging the architect. Under this interpretation of the evidence Miss Roland merely stated the conditions under which she was willing to extend the lease. Although, according to Kent's testimony, she suggested engaging an architect to check the

figures on the proposed improvements, this suggestion did not constitute a promise by her to grant the option if that were done. Kent employed the architect to convince her that the necessary conditions existed, but she made no promise to extend the lease in the event they did, and remained free to withdraw her offer at any time before acceptance. Kent could have exercised the option as soon as it was executed, but he chose instead to wait rather than to undertake immediately the obligations incident to leasing the property for another four years. The engagement of the architect was to actuate Miss Roland to keep her offer open, but it did not constitute consideration binding her to do so. At best the evidence created a conflict for the trial court to resolve. (*Estate of Thomson,* 165 Cal. 290 [131 Pac. 1045].)

Defendant contends that in engaging the architect he acted in reliance upon the option given him by Miss Roland to extend the lease, and that under the doctrine of promissory estoppel a promisor who has received no consideration is nevertheless bound by his promise when he has induced another to suffer detriment in reliance thereon. (See Rest. Contracts, sec. 90; 1 Williston, Contracts (revised ed.), sec. 139.) There must, however, be a promise on which reliance may be based. (See *Medberry* v. *Olcovich,* 15 Cal. App. (2d) 263 [59 Pac. (2d) 551, 60 Pac. (2d) 281]; *Lasar* v. *Johnson,* 125 Cal. 549 [58 Pac. 161]; *University of Southern Calif.* v. *Bryson,* 103 Cal. App. 39 [283 Pac. 949]; *Magee* v. *Magee,* 174 Cal. 276 [162 Pac. 1023].) Defendant did not plead the issue of promissory estoppel at the trial, and there is nothing in the record to show that Miss Roland at any time promised to keep the option open or made any other promise on which defendant could rely. She merely made without consideration an offer, which was never accepted, to renew the lease.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Carter, J., concurred.

Appellant's petition for a rehearing was denied March 9, 1942.