[Civ. No. 384.   Fifth Dist.   Dec. 22, 1964.]

FERNANDO I. FERREYRA, Plaintiff and Appellant, v. E. & J. GALLO WINERY, Defendant and Respondent.

Cobey & Adams, James A. Cobey, Jeremy C. Cook and J. Hilary Cook for Plaintiff and Appellant.

C. Ray Robinson and Mary C. Fisher for Defendant and Respondent.

BROWN (R. M.), J.—Appellant appeals from a judgment of nonsuit in a jury trial entered on motion of respondent at the conclusion of appellant's presentation of his evidence in an action for his wrongful discharge by respondent with whom he had a contract of employment.

Appellant, a citizen of Argentina and head of the Agronomy Department of the Corcemar Company, was in charge of a 160,000 acre project reclaiming certain land in South America. In 1960 he was acting as a guide for Ernest Gallo, president of respondent company, who was touring South America at the time. Appellant told Mr. Gallo of his background, education, and his "long-standing desire" to immigrate to the United States, and appellant testified that in a conversation with Mr. Gallo he "mentioned to him [appellant] . . . the possibility of a job for him at the Gallo Winery Ranch as a foreman at $450.00 a month. And suggested that he write Mr. Gallo upon his return to the United States." Appellant did write to Mr. Gallo on April 25, 1960, the letter, reading in part, as follows:

"Mr. Gallo, when you were in Argentina, in the way to San Juan, from Mendosa, we had a conversation about the possibility I could have to get a job in the United States. You told me it could be possible for you to furnish me with such a job.

"An American friend of mine, Capt. Ed. Schmidt from

Modesto, California, has already sent to me the affidavis [sic], that is the document will allow me to enter the United States as an immigrant. Therefore, what I need now is to know if I will have a job there, at least for a while, since I have the purpose to take with me about U$S 5,000 to see if I can settle for my own later on.

"Maybe, if you don't have an opportunity in your organization, you may tell me of some friends of you. Could it be possible to have your answer in order I can travel to the States for the last days of June? Do you think I may take my family along with me, or I have to call them later? . . ."

Mr. Gallo's reply, dated May 10, 1960, read as follows:

"I am in receipt of your letter of April 25th, in which you advise that you would like to immigrate to the United States.

"You ask whether there would be an opportunity in my organization, or in that of some of my friends.

"You can understand that I do not know enough about you or your ability to predict whether you will be happy in the United States, or at what type of work you would be most successful. Therefore, I could not recommend you to any of my friends. As for myself, I can only offer you a job as foreman, at a salary of $450.00 per month. I can also provide you with a very small house, but no furniture.

"What you would be worth to my organization would be determined quickly after you started working. I cannot make a commitment, as to the length of time I would keep you, as that would depend entirely upon what we think of your production. . . ."

On June 3, 1960, the appellant again wrote to Mr. Gallo, stating:

"I have received your letter of the 10th of May for which I am extremely grateful. Needless to say, I am greatly interested in your kind offer for employment as foreman at the Gallo Ranch and Vineyards of Livingston at the salary you mentioned.

"Since it will take a couple of months to procure all the documents I need for entrance into the United States, I should like to know whether it is all right with you if I arrive toward the end of July.

"All I can say is thank you again for your magnificent offer, and I will do my very best to line up to your expectation. . . ."

Subsequently, appellant asked for a letter with which to file with the American Consul and Joseph Gallo, respondent's

Ranching Division Manager, answered, as follows: "In reply to your letter of September 6, 1960, we are offering you permanent employment upon your arrival, to the extent of satisfaction to both you and ourselves, on our ranch at Livingston, California as a foreman. The starting rate would be $400.00 per month."

Meanwhile, appellant quit his job in Argentina, was paid a bonus of approximately $350, sold his house, arrived at Livingston, California, on or about October 8, 1960, and began work for the respondent company on October 15th at $450 per month, together with the use of a house. His work consisted of acting as a crew boss or field foreman of one of several pruning and irrigation crews.

On January 1, 1961, his pay was reduced to $350 per month, at which time he was told that he was too young and too "green" for the job. He remained on the job and on April 10th was discharged, though paid for the entire month of April, and remained in the house until May 15th.

After his discharge the appellant went to Paul Osteraas, the ranch manager, and requested a certificate of employment with the company, and he was provided with a letter dated April 25, 1961, which read as follows: "This is to certify that FERNANDO I. FERREYRA was employed by this company from October 15, 1960 to April 30, 1961 as a Field Foreman.

"During this period we found his work to be satisfactory in this capacity."

Appellant worked at several jobs on various farms after his discharge, and in September 1963 obtained a job at the Defense Language Institute, and at the time of trial was currently employed by the Department of Defense as a civil servant.

Appellant made several offers of proof, which were rejected, as to his owning a home in Argentina, that he had a full-time maid, that he had a wife and six children, and that he moved himself and his family from their home in Argentina to Livingston, California, at a total expense to himself of $2,683.

█ █ Under the law applicable to nonsuit cases of this type, in a case tried before a jury a motion for nonsuit may be granted only when, viewing the evidence in the light most favorable to the plaintiff, the result is that there is no evidence in the record of sufficient substantiality to uphold a verdict for plaintiff, and in making this determination the trial court must disregard all conflicting evidence and must give to plaintiff's

evidence all the probative force to which it is legally entitled. (*Meyer* v. *Blackman*, 59 Cal.2d 668, 671-672 [31 Cal.Rptr. 36, 381 P.2d 916]; 16 Cal.Jur.2d, Dismissal, § 45, pp. 208-209; 2 Witkin, Cal. Procedure (1954) Trial, §§ 125, 126, 127, pp. 1857-1859.)

It is appellant's contention that the exchange of letters created a contract of permanent employment which respondent was not privileged to break by his discharge without cause, because the appellant had furnished the respondent consideration for his contract in addition to his services thereunder. It is claimed that such consideration consisted of his giving up his job and way of life in Argentina, moving his entire family to California at substantial expense in response to and reliance upon respondent's offer of May 10, 1960, to give appellant permanent employment.

Appellant does not argue with the proposition that a personal service contract between an employer and an employee for so long as the employer is satisfied with the services is a contract for an indefinite term; or that a contract for an indefinite term is a contract for permanent employment, and cites *Lord* v. *Goldberg*, 81 Cal. 596, 601-602 [22 P. 1126, 15 Am.St.Rep. 82]; *Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 39 [172 P.2d 867]; *Ruinello* v. *Murray*, 36 Cal.2d 687, 689-690 [227 P.2d 251]; or that either party to a permanent employment contract is privileged to terminate it at will and with or without cause. This latter rule is laid down in Labor Code section 2922. However, it is the appellant's contention that where the employee furnishes to the employer consideration in addition to his services, the employer is not privileged to terminate a permanent employment contract without cause. (See *Speegle* v. *Board of Fire Underwriters, supra,* 29 Cal.2d 34, at page 39; *Ruinello* v. *Murray, supra,* 36 Cal.2d 687, at pages 689-690.)

■ It is the rule that a "contract for permanent employment is only a contract for an indefinite period, terminable at the will of either party unless it is based on some consideration other than the services to be rendered." (*Gressley* v. *Williams,* 193 Cal.App.2d 636, 642 [14 Cal.Rptr. 496].)

It is appellant's contention that the giving up of his employment in Argentina and moving himself and family to California was impliedly bargained for between the parties, because Ernest Gallo knew that the appellant was then employed in Argentina, living there with his family, and he would have to give up this employment and home and move

his family to California. Appellant further argues that the conduct of the respective parties as to such consideration was naturally not necessarily mentioned, as both knew that such should be apparent to anyone and that such implication under the circumstances is a question of fact for the jury.

With reference to consideration, it must be noted that in *Seifert* v. *Arnold Bros., Inc.*, 138 Cal.App. 324 [31 P.2d 1059], the written agreement signed by the employer gave the employee the employment ". . . In consideration of your purchasing an Essex Coupe we are offering you employment. . . ."

In *Millsap* v. *National Funding Corp.*, 57 Cal.App.2d 772 [135 P.2d 407], the employee told the employer that she would not change her position unless she was given permanent employment (p. 775). In this case the recognized definition of "consideration" as codified in section 1605 of the Civil Code is discussed.

Quoting from volume 6, California Jurisprudence, Contracts, section 117, at page 171, it is stated that, "It is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a 'prejudice be suffered or agreed to be suffered' by the promisee." (See 12 Cal.Jur.2d, Contracts, § 31, p. 226.) (*Anchor Cas. Co.* v. *Surety Bond Sav. & Loan Assn.*, 204 Cal.App.2d 175, 181 [22 Cal.Rptr. 278] ; *Stone* v. *Burke*, 110 Cal.App.2d 748, 756 [244 P.2d 51].)

In *Fibreboard Products* v. *Townsend*, 202 F.2d 180, 182-183, the court supports the general rule that a contract for permanent employment is only a contract for an indefinite period of time and terminable at will by either party unless it is based on some consideration other than services to be rendered.

The respondent argues that the written contract defines the rights of the parties and the appellant may not attempt to void these terms by the use of parol evidence, citing section 1625 of the Civil Code and section 1856 of the Code of Civil Procedure. In *Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, the court stated at page 272 [209 P.2d 581] : "The true consideration of a contract may be shown by extrinsic evidence (*Shiver* v. *Liberty Bldg.-Loan Assn.*, 16 Cal. 2d 296 [106 P.2d 4] ; . . .

". . . . . . . . . . . .

"But the consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. (*Bard* v. *Kent*, 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032] ; *Tiffany & Co.* v. *Spreckels*, 202 Cal. 778 [262

P. 742]; *Williams* v. *Hasshagen,* 166 Cal. 386 [137 P. 9]; *Lasar* v. *Johnson,* 125 Cal. 549 [58 P. 161]; Rest., Contracts, § 75; see Williston, Contracts [rev. ed.] §§ 61, 100, 102, 102a.) In the words of section 75 of the Restatement of Contracts (com. b): 'Consideration must actually be bargained for as the exchange for the promise. . . . The existence or non-existence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties. . . . The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange.' (Language approved in *Bard* v. *Kent, supra,* p. 452.)''

In *Savage* v. *Spur Distributing Co.,* 33 Tenn.App. 27 [228 S.W.2d 122], the plaintiff claimed that his additional consideration given for the employment contract was the detriment to himself in giving up his former job, moving his family, finding new living quarters, and buying a new home at inflated prices. The court rejected this argument, stating at page 125 [228 S.W.2d]: ''These things, however, do not appear to have been mutually understood by the parties as any part of the agreed exchange or consideration. Defendant's offer was only for plaintiff's services as its assistant secretary. This was the only consideration moving to it. These other things were of no benefit to it. At most they were merely a detriment to him incident to preparing himself to accept its offer—only the same sort of detriment that ordinarily results to any employee who leaves one employment and goes elsewhere to accept another.'' (*San Francisco Brewing Corp.* v. *Bowman,* 52 Cal.2d 607, 614 [343 P.2d 1]; see also *Page* v. *New Orleans Public Service, Inc.,* 184 La. 617 [167 So. 99]; *Lynas* v. *Maxwell Farms,* 279 Mich. 684 [273 N.W. 315]; and *Skagerberg* v. *Blandin Paper Co.,* 197 Minn. 291 [266 N.W. 872], to the same effect.)

In *Thacker* v. *American Foundry,* 78 Cal.App.2d 76 [177 P.2d 322], the employee was attempting to rely on the *Millsap* opinion [*Millsap* v. *National Funding Corp., supra,* 57 Cal. App.2d 772], and the court stated at page 85: ''. . . plaintiff has failed to direct our attention to evidence showing any declaration on his part that he would not give up present employment to work for defendants unless the latter would agree to permanently employ him or any acquiescence by the employers to such terms.''

The appellant has failed to point out any evidence

that he told the respondent that he would not consider leaving his job in Argentina unless he was promised permanent employment with respondent, and in fact, indicated his long-standing desire to come to the United States and apparently needed an employment offer in order to accomplish this.

In view of the foregoing, the judgment is affirmed.

Conley, P. J., concurred.

STONE, J., Dissenting. I have no quarrel with the principles of law enunciated by the majority opinion; rather, I find in the terms of the contract "some consideration other than the services to be rendered," a consideration stressed by *Gressley* v. *Williams,* 193 Cal.App.2d 636, 642 [14 Cal.Rptr. 496], cited by the majority.

Appellant's initial letter addressed to respondent, which is set forth in the majority opinion, reflects that appellant asked for a job so that he could move his family from Argentina to the United States. Respondent's reply, which is also quoted in the opinion, advised appellant: "I am in receipt of your letter of April 25 *in which you advise that you would like to immigrate to the United States. . . .* As for myself, I can only offer you a job as foreman, at a salary of $450.00 per month. I can also provide you with a very small house, but no furniture. . . . I cannot make a commitment, as to the length of time I would keep you, as that would depend entirely upon what we think of your production." (Italics added.)

Thereafter appellant requested a letter for deposit with the United States Consul in Argentina, reflecting that employment awaited appellant in the United States. In reply, respondent's ranching division manager wrote appellant: "In reply to your letter of September 6, 1960, we are offering you permanent employment upon your arrival, to the extent of satisfaction to both you and ourselves, on our ranch at Livingston, California as a foreman. The starting rate would be $400.00 per month."

Following the exchange of correspondence which comprises the contract, appellant quit his job in Argentina and moved his wife and six children to Livingston. This moving, it seems to me, constitutes part performance of the contract in reliance upon the promise of "permanent employment upon your arrival, to the extent of satisfaction to both you and ourselves, . . ."

It seems to me that my colleagues take too narrow a view of the scope of the contract by ignoring the fundamental or motivating reason for the contract in the first instance, namely, appellant's moving from Argentina to the United States. Appellant's opening letter in the exchange of correspondence which constitutes the contract, expressed this purpose. Respondent's letter agreeing to give appellant permanent employment was not for the sake of a job as such, but to induce the American Consul in Argentina to give appellant clearance to move to the United States. The clear and unambiguous language employed in the exchange of letters reflects that all parties contemplated employment not as a job but as a means to an end. Under these circumstances I believe the contract for permanent employment must be interpreted to mean employment for a reasonable time, and terminable for cause only, not at will. (32 Cal.Jur.2d, § 43, p. 452.)

Furthermore, it would offend public policy to hold that after assuring the United States Consul that appellant had a permanent job waiting for him in this country, respondent could discharge appellant without cause the day after his arrival. This is the practical interpretation of the holding that the contract of employment was terminable at will. It would circumvent the requirement of the United States that an immigrant so circumstanced file a letter assuring permanent employment to prevent the immigrant, his wife and his children, from becoming public charges.

This is not to say that respondent had no just cause for discharging appellant. The judgment was entered upon a nonsuit and we must, as pointed out in the majority opinion, disregard all conflicting evidence and give to plaintiff's evidence all probative force to which it is legally entitled. (*Meyer* v. *Blackman*, 59 Cal.2d 668, 671-672 [31 Cal.Rptr. 36, 381 P.2d 916] ; 2 Witkin, Cal. Procedure, Trial, §§ 125, 126, 127, pp. 1857-1859.) Respondent's proof may reveal just cause for appellant's dismissal, but respondent should be required to prove that issue. The matter should not be determined by a nonsuit upon the legal ground that the contract was terminable at will.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1965. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.